IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3037-D

| | | |
|---|---|---|
| ANTONIO SANTWAN AVENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOHN E. WIND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 12, 2024, Antonio Santwan Avent ("Avent" or "plaintiff"), a pretrial detainee proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. On May 22, 2024, the court reviewed the complaint and allowed the action to proceed [D.E. 7]. On March 5, 2025, discovery concluded. See [D.E. 28, 55]. On April 3, 2025, defendants David Bradley ("Bradley"), Samuel D. Langley ("Langley"), and John E. Wind ("Wind") moved for summary judgment [D.E. 74]. On April 4, 2025, defendant Scott Hall ("Hall") moved for summary judgment [D.E. 80].[1] The court notified Avent about the motions for summary judgment, the consequences of failing to respond, and the response deadlines [D.E. 79, 89]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On April 28, 2025, Avent responded in opposition to defendants' motions for summary judgment [D.E. 90, 91, 92, 93, 94, 95]. On May 9, 2025, defendants Bradley, Langley, and Wind replied [D.E. 96]. On May 19, 2025, defendant Hall replied [D.E. 99]. As explained below, the court grants defendants' motions for summary judgment.

---

[1] The court grants defendant Hall's motion to seal [D.E. 86].

Defendants Bradley, Langley, and Wind are Roanoke Rapids police officers. See Wind Aff. [D.E. 74-1] ¶ 2; Langley Aff. [D.E. 74-2] ¶ 2; Bradley Aff. [D.E. 74-6] ¶ 2. On April 11, 2021, at approximately 3:33 a.m., Langley was called concerning a 911 hangup. See Langley Aff. at ¶¶ 2–3.[2] Langley answered the call and spoke with Avent. See id. at ¶ 3. Langley contends Avent spoke delusionally and wanted to give him information about a murder. See id. Langley told Avent to head home and cleared the call. See id.

At approximately 5:30 a.m., Langley was dispatched about a report of a person driving a Toyota who had a machete and was talking about a murder. See id. at ¶ 4. Langley also responded and initiated a traffic stop. See id. As the Toyota stopped, the driver, later identified as Avent, threw a machete out of the driver's side window along with a phone and a wallet containing multiple bills of Monopoly money. See id. After searching the Toyota, Langley located a broken glass smoking pipe, two open containers of alcoholic beverages, and two small nuggets of marijuana. See id. at ¶ 5.

Langley placed Avent under arrest and drove him to the police department to process him and prepare him for transport to the Halifax County Magistrate's Office. See Langley Aff. at ¶ 6; Avent Aff. 1 [D.E. 91] ¶¶ 6–7. Bradley and Wind were present with Langley at the police department. See Wind. Aff. at ¶ 10; Langley Aff. at ¶ 6; Bradley Aff. at ¶ 2. Avent became combative when defendants prepared to transport him to the Halifax County Magistrate's Office. See Bradley Aff. at ¶ 3. Avent accused defendants of not being real police officers and accused

---

[2] Defendants Bradley and Langley state the incident occurred on April 21, 2021, but this date appears to be a typographical error. The incident report states the incident occurred on April 11, 2021. See Langley Aff. [D.E. 74-2] ¶ 2; Bradley Aff. [D.E. 74-6] ¶ 2; cf. Defs.' Ex. A [D.E. 74-3] 2–10.

them of being undercover federal agents who were going to kill him. See Langley Aff. at ¶ 6; Wind BWC 1 at 5:38:16–5:56:28. Avent also demanded to use a phone but refused to use the one he was provided because he thought it was bugged or not properly working. See Wind Aff. at ¶ 10; Wind BWC 2 at 6:14:44–6:16:33.

Due to Avent's behavior, defendants decided that Avent was a danger to himself and others and needed medical attention for a possible involuntary commitment order. See Wind. Aff. at ¶ 10; Langley Aff. at ¶ 6. Defendants decided to transport Avent to the hospital instead of the Halifax County Magistrate's Office, but Avent resisted being escorted to the parking lot. See Bradley Aff. at ¶ 4; Wind BWC 2 at 6:16:33–6:17:19. Defendants placed Avent in the front passenger seat of Langley's patrol car but later determined that was unsafe due to Avent's physical outbursts. See Bradley Aff. at ¶ 6; Wind BWC 2 at 6:17:19–6:20:14. Defendants decided to place Avent in the backseat of Bradley's patrol car because it was equipped with a backseat prisoner cage. See Bradley Aff. at ¶ 6; Avent Aff. 1 at ¶ 8; Wind BWC 2 at 6:20:14–6:21:14.

Once defendants placed Avent in the backseat of Bradley's patrol car, Avent repeatedly bashed his head into the rear window despite being secured with handcuffs and a seatbelt. See Bradley Aff. at ¶ 6. Defendants were concerned that Avent would shatter the glass and harm himself or others; therefore, they decided that Bradley should disarm his weapon and get into the backseat of the car with Avent. See Bradley Aff. at ¶ 6; Langley Aff. at ¶ 7; Wind BWC 2 at 6:29:58–6:31:42; Wind BWC 3 at 6:31:00–6:32:10. Langley then drove the patrol car to the hospital with Bradley sitting in the backseat with Avent. See Bradley Aff. at ¶ 6; Langley Aff. at ¶ 7. During the ride to the hospital, Avent screamed, unbuckled his seatbelt, threatened to tear up the car, threatened to bite Bradley, and attempted to strike his head against the car. See Bradley Aff. at ¶ 7; Langley Aff. at ¶ 7. Avent contends that Bradley punched him, pulled his hair, and

strangled him during the ride to the hospital. See Avent Aff. 1 at ¶ 9. Defendants respond that Bradley did not strike Avent in any way and only used soft hand contact such as grabbing, pushing, and pulling redirective measures. See Bradley Aff. at ¶ 7; Langley Aff. at ¶ 7; see also Wind BWC 3 at 6:30:57–6:36:22; Bradley BWC 1 6:31:55–6:38:12.

Shortly after arriving at the hospital, Avent threw himself out of his wheelchair, and officers and medical personnel carried him to a bed. See Langley Aff. at ¶ 8; see also Wind BWC 4 at 6:40:40–6:41:43. Avent was then medically sedated, placed in a bed, and the officers and medical personnel decided to seek an involuntary commitment order. See Bradley Aff. at ¶ 8; Langley Aff. at ¶ 8; Avent Aff. 1 at ¶ 11. Langley left the hospital to complete the involuntary commitment paperwork at the Halifax County Magistrate's Office. See Bradley Aff. at ¶ 9; Langley Aff. at ¶ 9; Avent Aff. 1 at ¶ 12. While awaiting the order, Bradley stood by Avent's bed until other officers relieved Bradley. See Bradley Aff. at ¶¶ 10–11. Avent awoke and attempted to bite and kick the officers and nurses, but officers used no physical contact to stop Avent because he was restrained to his bed. See id. Bradley had no further interaction with Avent after other officers relieved him from his post. See id. at ¶ 12.

At approximately 10:18 a.m., Wind arrived at the hospital and learned that Avent had been medically sedated. See Wind. Aff. at ¶¶ 3–5. Wind also discovered that nurses found a bag of crack cocaine in Avent's undergarments. See Wind. Aff. at ¶ 4; Hall Ex. 7 [D.E. 85] 33. At approximately 4:29 p.m., medical staff checked on Avent and noted that he was awake, drinking water, answering questions, and cursing at people. See Hall Ex. 7 at 33. At approximately 4:33 p.m., a physician assistant noted that Avent was alert, oriented, and ambulating. See id. at 42. The physician assistant also noted that Avent "will be [discharged] to prison with police officer in room." Id. At approximately 5:00 p.m., Avent was discharged from the hospital. See id. at 33.

4

Wind remained at the hospital until Avent was released. See Wind. Aff. at ¶ 5. After Avent's release, another officer drove him to the police department to be processed for a drug possession charge. See id.; see also Hall Ex. 3 [D.E. 82-3] 5. After processing Avent, Wind took Avent to the Halifax County Detention Center as ordered by Halifax County Magistrate Christopher Kidd. See Wind. Aff. at ¶ 6; see also Hall Ex. A [D.E. 33-1] 2.

Defendant Hall was a law enforcement officer at the Halifax County Sheriff's Office. See Hall Aff. [D.E. 82-1] ¶¶ 2–5. In compliance with Magistrate Kidd's order, Hall took Avent into custody at the Halifax County Detention Center. See id. at ¶¶ 7–8. Hall did not observe anything suggesting Avent had a serious medical need that warranted not taking him into custody. See id. at ¶¶ 9, 12–14. Hall used minimal force to move Avent from the police car to inside the detention center. See id. at ¶¶ 10–11. Avent contends that he was not medically cleared to be released from the hospital, and Hall forced him to be admitted to the detention center. See Avent Aff. 1 at ¶¶ 13–17; Avent Aff. 2 [D.E. 94] ¶¶ 2–4; cf. Hall Ex. 7 [D.E. 85] 1–50.

In his unverified complaint, Avent alleges defendants violated his constitutional rights by using excessive force against him and being deliberately indifferent to his serious medical needs. See Compl. [D.E. 1] 5. Avent also asserts state-law tort claims for assault and battery against defendants Langley and Bradley. See id.

## II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence

of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378; Simmons v. Whitaker, 106 F.4th 379, 385 (4th Cir. 2024); Alexander v. Connor, 105 F.4th 174, 179 (4th Cir 2024).

Defendants submitted video recordings capturing portions of the April 11, 2021 events. The existence of video evidence can affect the summary judgment standard. See Scott, 550 U.S. at 378–81; Brooks v. Johnson, 924 F.3d 104, 115 (4th Cir. 2019). Where the video contradicts the nonmoving party's version of the facts, such that no reasonable jury could believe the nonmoving party, the court must view the facts in the light depicted by the video. See Scott, 550 U.S. at 379–81; see, e.g., Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009). In order for the video evidence to discount plaintiff's version of events, the video must be "of undisputed authenticity," and "show[] some material element of the plaintiff's account to be blatantly and demonstrably false such that no reasonable jury could credit the plaintiff's version of events." Alexander, 105 F.4th at 179 (cleaned up); Scott, 550 U.S. at 380.

Courts evaluate a state pretrial detainee's claims for excessive force and deliberate indifference to serious medical needs under the Fourteenth Amendment. See, e.g., Kingsley v. Hendrickson, 576 U.S. 389, 395–402 (2015); Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979);

6

Simmons v. Whitaker, 106 F.4th 379, 387 (4th Cir. 2024); Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021); Michelson v. Coon, No. 20-6480, 2021 WL 2981501, at *2 (4th Cir. 2021) (per curiam) (unpublished); Coney v. Davis, 809 F. App'x 158, 159 (4th Cir. 2020) (per curiam) (unpublished).[3] To prevail on an excessive force claim, a pretrial detainee must demonstrate that "the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396–97. To determine the objective reasonableness of the force used, a court may consider the following non-exclusive factors:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

Id. (citation omitted). "Because the standard is an objective one, the court is not concerned with the officer['s] motivation or intent." Duff v. Potter, 665 F. App'x 242, 244 (4th Cir. 2016) (per curiam) (unpublished); see Kingsley, 576 U.S. at 397–400; Graham v. Connor, 490 U.S. 386, 397 (1989); United States v. Coe, 159 F.4th 202, 205 (4th Cir. 2025); Pegg v. Hernberger, 845 F.3d 112, 120 (4th Cir. 2017); Clay v. Emmi, 797 F.3d 364, 370 (6th Cir. 2015).

To prevail on a claim for deliberate indifference to a serious medical need, a pretrial detainee must demonstrate that:

> (1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the

---

[3] To the extent Avent raises his excessive force and deliberate indifference claims under the Fourth, Eighth, and Fourteenth Amendments, see Compl. [D.E. 1] 5, these claims are materially indistinguishable. See, e.g., Somers v. Devine, 132 F.4th 689, 698 (4th Cir. 2025); Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021); Brown v. Harris, 240 F.3d 383, 388–89 (4th Cir. 2001); Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 990–92 (4th Cir. 1992).

defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). Under this standard, plaintiff need not "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. Rather, the plaintiff must "show that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. (quotation and citation omitted). But plaintiff cannot merely "allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611–12.

As for Avent's excessive force claims, Avent alleges that Bradley "got in the back seat and punch[ed] [him], pulled [his] hair[,] and strangle[d] him." See Avent Aff. 1 [D.E. 91] ¶ 9. Defendants deny the allegations that Bradley struck Avent in any way and contend that Bradley pulled Avent's hair to redirect his head and prevent him from biting Bradley. See Langley Aff. at ¶ 7; Bradley Aff. at ¶ 7. The video evidence supports defendants' version of events and clearly demonstrates that Bradley never punched or strangled Avent. See Bradley BWC 1 6:31:55–6:38:12; see also Scott, 550 U.S. at 379–81; Alexander, 105 F.4th at 179. Moreover, the video evidence shows that Avent was severely paranoid, delusional, and combative while defendants were transporting him to the hospital for mental health treatment, and Bradley patiently tried to deescalate the situation by speaking with Avent and using minimal force to redirect Avent's head to prevent Avent from hurting himself or biting Bradley. See Bradley BWC 1 6:31:55–6:38:12. Avent failed to produce sufficient evidence for a reasonable jury to find that Bradley used objectively unreasonable force when he was in the backseat with Avent. See, e.g., Byrnside v. Griffin, No. 1:23-CV-319, 2026 WL 102684, at *3–4 (W.D.N.C. Jan. 13, 2026) (unpublished); Davis v. Messer, No. 1:24-CV-233, 2025 WL 3268419, at *3–4 (W.D.N.C. Nov. 24, 2025)

8

(unpublished); Hendon v. McCain, 1:25-CV-5, 2025 WL 2408794, at *8–9 (W.D.N.C. June 30, 2025) (unpublished). Thus, the court grants defendants' motions for summary judgment on that excessive force claim.

Avent also vaguely contends that defendants used excessive force against him by removing him from the hospital before he was medically cleared and forcing him to be admitted to the Halifax County Detention Center unconscious. See Avent Aff. 1 at ¶ 14; Avent Aff. 2 at ¶ 4. But Avent fails to specify or present any evidence identifying the type of force that defendants allegedly used. See Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (finding "unsubstantiated allegations and bald assertions" fail to demonstrate a genuine issue for trial). Moreover, the evidence belies Avent's statements and demonstrates that Avent was conscious when the hospital discharged him and that Avent was admitted to the Halifax County Detention Center pursuant to Magistrate Kidd's order. See [D.E. 33-1] 2; [D.E. 85] 33, 42.

To the extent Avent raises any other vague and conclusory claims that defendants used excessive force against him, Avent's complaint is not verified and Avent failed to offer affidavits, declarations, or other competent summary judgment evidence concerning any other excessive force incident in opposition to defendants' motions for summary judgment. See Compl. at 1–11 cf. Avent Aff. 1 at ¶¶ 1–17; Avent Aff. 2 at ¶¶ 1–5; see also Celotex, 477 U.S. at 324; Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021). Thus, the court grants defendants' motions for summary judgment on Avent's remaining excessive force claim.

9

As for Avent's claims that defendants were deliberately indifferent to his serious medical needs, Avent alleges defendants removed him from the hospital before he was medically cleared and brought him to the Halifax County Detention Center unconscious. See Compl. at 5; Avent Aff. 1 at ¶¶ 13–17; Avent Aff. 2 at ¶¶ 2–4. The medical records belie Avent's allegations and demonstrate that Avent was conscious when the hospital discharged him. See [D.E. 85] 30–33, 40–42. Additionally, Avent's reliance on the incident report, which stated that jail staff would not take Avent and he needed to be medically cleared, is misplaced and taken out of context. Avent was at the police department being prepared for transport to the magistrate's office when defendants decided that Avent needed to be medically cleared due to his behavior. See Avent Aff. 2 at ¶ 2; cf. [D.E. 82-3] 6. Defendants then decided to transport Avent to the hospital instead of the magistrate's office and did not transport Avent to the jail until after the hospital discharged him. See id. at 2–9; [D.E. 85] 33, 40–42.

To the extent Avent believes he should not have been discharged from the hospital, Avent's dispute constitutes a difference of opinion about the proper course of medical treatment and fails to state a claim for deliberate indifference to a serious medical need. See, e.g., Hixson v. Moran, 1 F.4th 297, 302–03 (4th Cir. 2021); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Miller v. Blue Ridge Reg'l Jail, No. 7:17-CV-161, 2018 WL 3341792, at *5 (W.D. Va. July 6, 2018) (unpublished). Moreover, defendants are not medically trained and may rely on the expertise of healthcare providers concerning Avent's treatment. See Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) ("If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (cleaned up)); Lewis v. Hoke Cnty., No. 1:17CV987, 2020 WL 5213929, at *7–8 (M.D.N.C. Sept. 1, 2020) (unpublished), report and

10

recommendation adopted, 2022 WL 292928 (M.D.N.C. Feb. 1, 2022) (unpublished), aff'd, No. 22-6171, 2022 WL 1641282 (4th Cir. 2022) (per curiam) (unpublished). Thus, the court grants defendants' motions for summary judgment.

In light of the dismissal of Avent's federal claims, the court declines to exercise supplemental jurisdiction over any state-law claims and dismisses those claims without prejudice. See 28 U.S.C. § 1367(c)(3); Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 31–32 (2025); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Kovachevich v. Nat'l Mortg. Ins. Corp., 140 F.4th 548, 556 (4th Cir. 2025); Henderson v. Harmon, 102 F.4th 242, 251 (4th Cir. 2024); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

### III.

In sum, the court GRANTS defendants' motions for summary judgment [D.E. 74, 80], GRANTS defendant Hall's motion to seal [D.E. 86], and DISMISSES WITHOUT PREJUDICE plaintiff's state-law claims. The clerk shall close the case.

SO ORDERED. This _6_ day of March, 2026.

JAMES C. DEVER III
United States District Judge